You call the next case, please. 3-11-0177 Ricky Robinson Jr. et al. Appellant Christine Gnawan v. Washington Township. Appellee Troy Lundquist. Ms. Gnawan? Did I pronounce that correctly? Gnawan. Gnawan. I can remember that for the next half an hour. Good morning. May it please the Court. Fact. On April 23, 2008, Washington Township had embarked upon repairs on the roadway at or near the location of 39400 South Stony Island Road and Beecher Road. Fact. Once Washington Township embarked upon these repairs, they had a duty to reasonably do these repairs in a reasonably safe and skillful manner. Fact. Washington Township, during these repairs and improvements on the roadway, negligently created a hazardous, dangerous, and unsafe roadway condition. And it's because of this negligent roadway condition that the Township created on its own, while performing these repairs, they breached their duty to do them in a reasonably safe and skillful manner. And hence, they're liable for any injuries that are caused because of this dangerous condition that they created. To be clear, we're not talking about just a pothole in a road and that's it. This situation on appeal is far beyond just a pothole. To be clear, what is asserted and alleged in the complaint is that Washington Township had begun removing asphalt and substrata layers from a considerable portion of the roadway. During these repairs, there were piles of dirt, sand, and rock in piles all over the roadway. There was gravel strewn across the roadway. And that the roadway itself was left in a grossly uneven and undulating surface for motorists to travel upon. And because of this dangerous roadway condition that Washington Township created on their own when they embarked on these repairs, they also failed to warn any motorists, failed to put up any lights, signs. Does the law require that? The warning, the sign? I believe that they do, Your Honor. Mainly because once the Township embarked upon a repair, they had a duty to perform the repair in a reasonably safe manner. That's performing the repair, but you're talking about signage and warnings. Do they have a duty to do that? Well, the lower court believes that they did not, but I still believe and assert that they do, mainly because warning is part of embarking and performing the repair in a reasonably safe manner. The condition that the roadway was left in was in an unsafe, hazardous, and dangerous condition. Now you pled that, is that correct? Yes, Your Honor. And you're pleading state? Yes. And the facts that you pled, are they any different than the facts that you pled regarding the other defendant, the trucking company? Well, the trucking company we also listed as a defendant, and they are listed as a joint tortfeasor. However, we also have different allegations as to negligence to them as well. It's in the condition of the roadway, is what I'm referring to, and you're pleading? I believe so, Your Honor, that we did. I believe so. How so? I believe essentially we used the same wording for the defendant trucking company, that because of the roadway. So the condition of the roadway upon them taking repairs was no different than the roadway before, right? That, I'm sorry, before what, Your Honor? The condition of the roadway that you claim that was the condition when they undertook repairs, was the same condition of the roadway before they undertook repairs? No, Your Honor. There is a delineation. Washington Township made the decision to repair the roadway at the area where the accident occurred. It's from these repairs that a dangerous and hazardous condition was created. But if I looked at your pleading and the condition of the roadway when they undertook the repairs, it was no different than the condition of the roadway that you pled was there before? I don't believe that's so, and I can look again through the pleadings and through the record. I believe that we pled that after the repairs began, the hazardous condition was created. Again, with the removal of the substrata layers, the asphalt, the piles and humps of dirt being left behind, the depressions, and the grossly uneven and undulating surface. Were those last two you pled in regard to the trucking company? I believe so. I'll have to check. So if that were the case, then they didn't do anything different to the roadway than what had existed previously? Again, I guess I'm getting confused on when you say they and previously. Well, you have to allege facts that suggest or leave the reasonable inference that there was negligence in the nature of the repairs that created a hazard bigger than the one that was there before they undertook the repair. Again, I'm trying to make sure that I understand your question and your situation. The roadway before any of these repairs began, we don't have any facts to, and would be outside of our knowledge because any type of plan or undertaking a repair decisions that Washington Township made would be in their ken, not in our ken. So we can only allege facts that we basically know offhand before any discovery. And I think that's a good time to bring up the fact that, again, the motion to dismiss that was granted at the lower level was just solely on 615, where no discovery had occurred yet, or has occurred. And maybe I'm not making myself clear, but Washington Township, at some point before the incident occurred, decided to, chose to, took an effort to begin repairing the roadway. And once the roadway repairs began, the hazardous conditions were essentially created by the Township. And it's because of those, that condition, that hazardous, dangerous, and unsafe condition that was a proximate cause to the accident that occurred on April 23, 2008. I guess what I'm saying, and I guess maybe to make myself clear, the hazardous road conditions that we're alleging in our complaint were not there before the repairs began. They were there after the roadway. There are a couple things you and your pleading add, but the other is boilerplate language you pled against the trucking company. Undulating road, dips, etc., etc., that you said the trucking company caused. I don't know if, I'd have to look at actually... That's fine, but you have to get something above and beyond the condition before they began the repair. Before the Township? They began the repair. Well, our assertion is that it really doesn't matter what the roadway looked like before the repairs began, it's because of the repairs. In essence, the repairs were still ongoing when this incident occurred. It's not like Washington Township came in, did some kind of repairs, and they were done. What had happened is that, or at least what we're alleging, is that they had begun the repairs, they had essentially finished for the day, but the repairs were not done, and they left the roadway in that condition for motorists to travel on, even though, essentially, the Township was going to come in the next morning and continue the repairs. But to prevail, you're going to have to show the condition they left it in was in a different condition than before they began the repairs, and arguably a more dangerous condition. And arguably, okay, I understand your point, and I understand that, yes. But, I'm sorry, was there any more that you wanted me to? Okay, you just kept looking at me like you wanted me to continue. You want us to reject our early decision in Lucieto. Can you tell us why? Absolutely. The decision in Lucieto, I understand it's a third district case, it's from 1969, but our contention with Lucieto is that it doesn't go far enough. It's not bad law, it's just not enough. It doesn't go as far as the facts in our case goes. For instance, in Lucieto, it was very clear. The plaintiffs in Lucieto filed a complaint against a government employee, an individual. And so Lucieto basically stated that a government employee for a municipality cannot be held liable, is immune essentially from any decisions he makes, and there was some discussion about filling potholes and their discretionary nature. But Lucieto goes to condition of roadway and a duty to repair a roadway. Right. We don't have that here, do we? Exactly. And that's the reason why we're arguing that Lucieto doesn't go far enough. It essentially doesn't apply because it stops short of what happened here. Lucieto basically discusses discretionary nature of where do a lot of resources, what potholes to repair, where should we repair. We've got limited resources. We can't repair everything, so we have to put priority. We have to make decisions, and those decisions are immune from liability. The situation we have here is obviously already two steps beyond that. Washington Township already made the decision. We're not, as athletes argue, second-guessing their decision. We're basically holding the Washington Township's feet to the fire, saying you have already decided to repair this roadway area. Because you made that decision and because you started the repairs already, you have a duty to do so, those repairs, in a reasonably safe and skillful manner. They breached that duty when they left the roadway in a hazardous, dangerous, and unsafe condition. So that, again, it's not that it's bad luck. It's just it doesn't apply here. So essentially we're saying it doesn't go far enough. If you were to apply, Lucietta, in this case, it would be in direct conflict with, admittedly, out-of-district cases, Old Hanley that we cite, Green, Bowen. But the problem is that with those cases is that it actually covers situations where the municipality has already decided and undertaken repairs. And those cases talk about that duty and that responsibility and those situations. Lucietta doesn't do that here. It stops short of the situation. Well, now you're kind of blaming the people drafting Lucietta for stopping short. But what were the facts of Lucietta? Lucietta, well, Lucietta, it was basically a trial. It really discussed more about the decisions made by the individual employee. The defendant in that case was an individual employee. I'm not putting any blame on the drafters of that opinion. What I'm saying, though, is that that situation doesn't apply here just because it talks more about what would be considered discretionary. Which potholes should we fix? Was that a repair case in Lucietta? Yes. They were essentially talking about where they're talking about potholes, which potholes to replace. And again, as I stated earlier, this is not merely a pothole case. This is beyond a pothole case. But the decision has already been made. And in Lucietta, I believe they're arguing that the decision-making essentially process, the decision-making process was discretionary. But the process has already been completed in our case on appeal in that Washington Township had already decided what area of road to repair and had already, in fact, embarked on the repairs at the time of the incident. Just to go back to what I was saying about Lucietta, is that if you hold Lucietta controlling in this situation, it's basically giving carte blanche to Washington Township to go out, create hazardous conditions, and then not have to be responsible for them, be liable for them. They could go out right now, arguably, and say that they choose to repair a bridge. They leave a gaping hole in the bridge, but don't just leave it there overnight, no warnings, no signs, no nothing. But then when someone gets hurt, when a car admittedly goes over the, or attempts to go over the bridge and falls through, Washington Township can just put their hands up and say, well, you know, that's not our fault, we're immune. They can't create the hazardous condition and not be held liable for it. And that's what's happening here in this case. Again, Lucietta, again, not blaming the drafters of that opinion, it applies to a different part of the process, essentially, of a repair. Council has two minutes. The decision-making process is more in line with Lucietta while Hanley, Green, Bowen talk more. Once the decision-making process has ended, they've decided what to repair, and repairs have begun. That's essentially what... So we don't need to reject Lucietta as much as distinguish her. Exactly, Your Honor. We don't need to reject. And like we say in our brief, it's not a bad law, it's just it doesn't apply here. And it definitely shouldn't be controlling here because, again, it does not apply. Just a couple more points on Lucietta. You know, there's a need right now to basically apply the statutes right now evenly across all the districts with Lucietta. You know, again, it stops just short of where we are in this case at this time. And, you know, any other arguments that were made at the lower court regarding cause of action in the complaint, I believe the appellees focused mainly on duty and breach of the duty, which I believe we did assert facts as best we could, and proper facts as best we could, well enough to survive a 615 motion. And any further requiring more specific facts would, A, be beyond the burden of what we have for our complaint, and, B, it's outside of our knowledge. We would need discovery in order to put more specifically when the repair started, how long the repairs were going to last, what the repairs were going to entail. Again, it's a situation of since the repairs had already begun, once the repairs began, a whole new set of duty and liability came forth. Counsel's time. Thank you. Okay. Thank you very much, Ms. Granoff-Granoff. And Mr. Lundquist. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Troy Lundquist, and with me at counsel table is my partner, Anastasia Hess. The issue before you is one that's very important to local governmental entities, particularly those in the 3rd District and further downstate. I think there's been distinctions drawn or attempts to draw distinctions between the law that has been the law here in our district for quite some time, in the shadow of cases like Havens v. Harris Township, cases that have spoken directly to discretionary immunity, versus other cases coming from the 1st District, the Hanley case, which has been cited by plaintiffs. And at least in the briefs and the arguments below, there was a very strong suggestion that Luschetto be overturned. That seems to have softened somewhat today in terms of distinguishing it rather than overturning it. But the point, I believe, remains that Luschetto is good law. It is applicable to this case. And Judge Powers in the court below followed it directly in granting the motion to dismiss. Which motion did he grant? He granted the 2615, didn't he? Not 2619. He did grant 2615, and Your Honor points out a good question. I think the mechanism and the sequence of events was he granted the 615, he had questions of plaintiffs. Along the lines, I think, that Your Honor mentioned here today, exactly what has been pled here. What did the township do to make the road different than it was before? Things along those lines. And he offered plaintiff leave to replete. Plaintiff was granted leave to replete their case, to put in more facts, to set forth with more particularity exactly what the township did wrong, to not allege in conclusory fashion that we undertook repairs and that somehow now the road is more dangerous than it was before. That's really what's lacking in the complaint. And I think Judge Powers correctly found that and pointed that out to them. Well, that's what I'm somewhat confused here, because we're going down this rabbit hole of immunity, too. Now, that's a 2619, isn't it? It may be. I think it speaks to both. Does it? How? The lack of a duty under common law discretionary immunity, which I assert still exists, and I realize that's another issue. If you go back to the Molitor decision, which overturned sovereign immunity and then the ratification of our Constitution thereafter, which specifically set that forth, we know sovereign immunity is no longer in place. But courts, including this court, have recognized special duty immunities and other immunities that were previously encompassed within the umbrella of sovereign immunity. Common law discretionary immunity is one of those. And I've never seen a case in Illinois that specifically says simply because we have the Tort Immunity Act. I recognize that Section 2201 of the Act attempts to codify discretionary immunity, but it also starts, except as otherwise provided by this Act. So there are certain exceptions. I maintain that common law discretionary immunity still exists and operates separate and apart from the codification of these immunities in the statute, the Tort Immunity Act. So to answer your question directly, I think the case was rightly dismissed under 615 because under the common law approach, there's simply no duty. So the plaintiff failed in an essential element of negligence by failing to set forth duty. I think it was also rightly dismissed, and as your honors know, the case can be dismissed on any grounds finding support in the record. I think it was also rightly dismissed under 619 because if you apply the Tort Immunity Act in that codification, there's also a specific immunity that applies here. The real dispute in the crux of this issue is construction versus repairs. I don't dispute, and counsel cited the Hanley case, which cited the Green case, and it plainly sets forth, which I don't dispute, that there are certain acts which are discretionary by their very nature. And the idea of adopting the policy to do them is discretionary. Once you undertake to do them, you have to do them in a non-negligent way, the specific acts. You agree with that? I agree with the general principle of law, yes. Okay. That, I believe, is a correct statement of the law. However, if you apply that to this case, the plaintiff, and this is what Judge Powers was looking for, what has been pled that the township did wrong that made the road more dangerous than it was before, other than to say, which I believe is what plaintiffs are really arguing here, that repairs were commenced but not enough were done. And that's the crux of the issue. That's why this is so important as a, not just this case, but as a policy statement. You can always look to roads. Roads are under a continual state of repair, particularly in April like this case, particularly when there are large trucks that are overweight driving on the roads, as has been referenced in this case. You can repair a road today and come back tomorrow and it's right back where you started again. I think we can take judicial notice of that fact, and this is where I think some of the first district cases may diverge. They don't have the same type of roads that we deal with. But this is very important. You're wanting us to distinguish roads downstate from roads in the city and suburbs? No. I'd like to distinguish some of the thought processes that go into a couple of the rulings. I think particularly Hanley, for example, which plaintiffs have relied on heavily and urged the trial court to accept over Luchetta, in Hanley there was specific evidence that the potholes were not repaired appropriately, that they didn't use the right type of asphalt. The Hanley plaintiff submitted an affidavit from an expert that criticized the manner of repair. And that's consistent with the Green case and the statement that I conceded I agree with. Okay. What were the facts in Luchetta? Luchetta, frankly, was a large hole of varying descriptions that existed for a very long time, that everybody knew existed, that the governmental official knew the section of the highway in the area where plaintiff's deceit was killed was in need of repairs for quite some long time before the accident. But that, again, I was trying to get opposing counsel to give me the facts here, but that's not a repair case. It's a decision to repair, which I agree with. But it's not a repair case. It's not a negligent repair case, where the repairs that were done were done negligently, but neither is ours. I would assert that all plaintiffs as alleged here, and this is, I think, frankly, why... I misspoke. When I'm talking about a repair case, I'm talking about taking an action of repairing. Luchetta was not a case of taking an action to repairing. True. I agree with that. The state law seems to be, for municipalities, you have a duty to keep these roadways, but if you don't do anything to them, you haven't reached the duty. I understand that. It's an interesting concept. Logically, it doesn't make sense. It doesn't. But under the law, that's what the law is seemingly saying. It's just like signs. You have no duty to put one up, but if you do, you then have an obligation to see that nobody steals it or moves it. I understand. The problem becomes in the repair situation, is once you undertake to repair a road, what happens next? Do you have to then repair that road every day? And I say no. The idea is to promote safety and not give governmental entities a disincentive to do things, like essentially we have in science. When it comes to repairs, you can always point to a repair that was made. Plaintiffs can always argue that the repairs weren't done enough of them or to their liking. But the crux of the cases are, and the real application of the law is, what has been alleged that we did to make the road dangerous? What did we do that made it worse than it was before? Did we use improper asphalt, like in handling? Did we do something that made it dangerous? Plaintiffs have alleged here that there was an overweight truck that drove on the road. Your Honor correctly pointed out that in their pleadings, the same exact descriptions are used. Undulating surface, still state of disrepair, sand, dirt, pits, potholes, road. That is from the count against the trucking company as it was stated against us. There's a really good concept and quote from the Supreme Court in West v. Kirkland. And in dealing with the signage issue, plaintiffs were arguing that there was a left turn arrow put for one direction of travel and not the other. Plaintiffs argued, well, you put an arrow one way, you didn't put one here. The Supreme Court said you can always look to something that the governmental entity did in an effort to argue they should have done more or something else. I think that is directly on point to our situation here. Plaintiffs are attacking the fact that repairs were commenced. That's what's been pled, and the well-pled facts are deemed admitted. They're pleading that repairs were commenced. They don't point out anything different about the condition of the roads after the repairs were commenced than they've pled in the other counts as to the repairs before they were started, as to the condition of the road before they were started. That's crucial. They've also failed to allege the arguments, if you listen closely, that are made before your honors today as well as in the briefs are actually different than the pleading. They don't say in the pleading that we created a negligent condition. All they say in the pleading is that we commenced repairs and we didn't finish repairs. That same principle that this court announced in Luceto should apply to how much repairs you do. I believe Luceto is on point. It's still good law. The fact that it's from 1969 does not make it bad. It's still very applicable and I think right on point in this case. That's really the bottom line of all the discussion. Plaintiffs failed to allege with any type of factual support that we created a dangerous condition that was different than before. Is it possible for plaintiffs to make that allegation? Absolutely. All they had to do was allege very simply township created dangerous condition that was not there before. So if it's possible for the plaintiff to state a claim that is capable of getting relief, should this have been dismissed with prejudice? It was only dismissed with prejudice after plaintiffs failed to take the trial court up on the opportunity to plead that. Now I would assert that you can draw certain conclusions from that failure. I don't think for a minute that plaintiffs' counsel just simply failed to do it. I think you have to look at the facts. Could they have pled more facts? Were there more good faith facts in existence that they could have pled to connect that final dot? I don't argue for a minute that plaintiffs need to plead their whole case in an initial pleading or that they have to set out all evidentiary facts in an initial pleading. But we are a fact-pleading state. The Knox case and all its progeny speaks to that. And plaintiffs left out a crucial element that shows a nexus between what the township did and the allegedly dangerous condition that was somehow different than before. So we have a pleading defect. Absolutely. Do you deny that once a governmental entity undertakes to make a repair, it has to do it in a way that's consistent with the safety of the people? I don't deny that once a governmental entity undertakes a repair, it has to do the steps it takes in a non-negligent way, because the steps they take arguably are ministerial. There's selection of asphalt, things of that nature. Your Honor's question, I would respectfully say, goes a bit beyond what I think the duty is. We're not then liable to safeguard the safety of the people, because that implies a further duty. We'll take the plaintiff's example of the bridge with the big hole in the middle of it. Is it your argument that it would not be reasonable to expect whoever was making the repair to put up a sign to say there's a big hole, you're going to fall in it if you don't stop? Your Honor, under the Supreme Court decision in West in 3104, my simple answer to the question is, no matter what anybody does, if there's no sign there, you have an obligation to put one up. Now, I won't dispute that if a governmental entity goes out and creates a hole in the bridge, then they need to fix that hole, because the creation of the hole is the negligent act that would fit within the decisions. But your example, much like Luschetto, in Luschetto, heard by this Court, the governmental official knew that hole existed. He knew that hole existed in a sufficient time that it could cause injury and harm. He hadn't fixed it, and there's no duty. The clear difference between this case and Luschetto, it seems to me, is that in Luschetto, there was a hole there, and it was up to the discretion of the governmental employee whether or not to undertake the repair of that pothole. Here, what we have is an allegation that they made the decision to repair the pothole or the street or whatever it was, and that they did it in a negligent manner that created a dangerous condition. So I'm not thinking personally that Luschetto is controlling in this case. And it sounds to me like what you're saying, the defect is that the plaintiff either didn't know or didn't plead what the condition of the road was before the repairs were started. Is that where we are? No, I actually believe the plaintiff did know the condition of the road. Okay, or didn't plead it. Well, they did plead it in the Count against the Trucking Company. They had knowledge of the condition of the road, allegedly, before the repairs and after the repairs, and they've pled that those conditions are the same. And that is the ultimate problem that I think the trial court had, that there has not been a demonstration, even at a bare minimum fact-pleading basis, that the township changed that condition in some way. There's no evidence or even allegation, there's argument, but there's no allegation that the township engaged in a planned or designed road construction project. That's clearly distinct from repairs. And we have to understand that you're not doing repairs unless there's something there to repair. Yeah, I think you're getting off the point. The focus on the point is that if you're going to say that your repair is negligent, you have to plead in what manner it is negligent. Exactly. And you're saying the pleading is faulty because it does not distinguish. That says it much better than I did. And it does not distinguish between the condition before versus the condition after we allegedly acted. That's completely lacking. In fact, it's not completely lacking. It actually shows that we didn't change it. If you read all the allegations, the only allegations this plaintiff set forth were that we in fact did not make it negligent because it was in the same condition before as it was after. And there was permission to re-plead. Am I correct? There was permission to re-plead. There was the opportunity given to the plaintiff to go in and say, no, Your Honor, it was not the same. I'm going to show you how we changed it. I will demonstrate facts as to what we did to make it dangerous or how we erred in our steps. And that was declined. The plaintiff failed to do that. Last time. Your Honors, may I just thank you for your attention and hearing me today. You can always thank us. Ms. Gannon? Just very briefly, so please support. Counsel brought up Westby-Kirkham, and I just wanted to say a little bit on Westby-Kirkham. That case also, we argued, does not apply in this case essentially because that talks about a situation of initial construction, initial building. At the time of this incident, Stony Island and Beecher Road had been there. They'd been there for decades, I'm going to assume. They were not initially constructing. So the lights and signs argument that counsel argued under West wouldn't apply here because it's not an initial construction type of situation. I think it's worth repeating to state that our argument is that during the course of these repairs created this hazardous roadway condition. And what did you plead in that respect? I mean, this is, I think we've narrowed it all down. How do you plead? What did you pledge? I mean, essentially we argued that at the place Affor said, and prior to the occurrence alleged herein, the defendant, Washington Township, had started various repairs on the roadbed, including the removal of the asphalt surface and substrata, that at all times relevant the roadbed had sand and dirt piled and humps, had holes and debris strewn thereon, and did not have a solid, flat, even surface for vehicles to drive upon. And then later we state that Washington Township failed to act in one or more of the following ways, and one of them being after having started the repairs, Washington Township failed to provide a road free of hazardous defects when the defendant knew or should have known the existence of these hazardous conditions of the road, essentially because they created the defect. They started the repairs. It's very clear. I think counsel was attempting to. I think that's the point. They created the defect? Yes. Yes, Your Honor. They did. Washington Township created this defect. The whole entire defect of the grossly uneven undulating surface. And what did the trucking company do? Essentially we allege that basically the trucking company, and just so I'm clear, I don't want to basically misstate it, that their trucks were overweight, essentially. That they operated and used overweight trucks with a gross weight in excess of the maximum legal limit for the said roadway. And then that essentially contributed to the unevenness and the holes and the cracks. Contributed or caused? I mean, what was the language you used? You're looking at your complaint, right? Yes, right here. Yes. Basically it says that as a result of the continuing operation of the overweight trucks with a gross weight in excess. Sorry, let me go back one paragraph. That at all times relative there to the trucks owned by the defendant trucking company were overloaded so that the gross weight of the vehicles and load exceeded the maximum weight allowed by law of seven tons for Stoney Island. And that with the continuing operation of the overweight trucks with a maximum legal limit for said roadway, the roadway developed holes, cracks, and uneven surface with bumps, humps, ruts, and missing sections. Essentially arguing that the trucking company contributed to the defect, but it essentially was created by the township initially because they had started the repairs. So you're saying that the trucking company exacerbated the dangerous condition that had already been created by the township? Essentially, yes, Your Honor. Exactly. Because, again, if you go back, counsel kept bringing up Lucieto and decisions to repair. Again, that's not the situation here. The decision had already been made. And once that decision is made, the repairs must be done in a reasonably safe and skillful manner. Counsel has one minute. Creating a hazardous condition essentially makes the task of repair ministerial and makes the township liable. Thank you. So if you have a roadway that's a mile long and there's one pothole, but there's other potholes three-quarters of a mile down the roadway, but you undertook to repair the one pothole, what happens to the other potholes? In that situation, I would argue that Lucieto would apply if you're arguing that there was an accident in the other unfilled potholes. Right. There's immunity. And there's the reason. There's immunity. Well, I'll say this with a qualification. The reason there's immunity is that there was no repair work that had started essentially with those other potholes that were not repaired. You see, there was a discretionary decision by the municipality. Let's go away from potholes. Okay. Let's go to an asphalt road like was pictured in the record. Okay. And that is basically deteriorating road. Okay. All the way that one mile. There's no difference in the condition at the end of the one mile is the beginning of the one mile. Okay. And then they decide to fix 100 feet at the beginning of the road. And there's an accident at the end of the road. Okay. And there's the delineation right there is that the situation in our case  Okay. The end of the portion of the road where you're saying was already deteriorated, that would be where essentially Lucero would come into play because the township decided not to repair anything. And that's another distinction. I'm going to assume that the roadway condition was as of a normal wear and tear. Again, in our situation, the roadway condition was created by the township. So I think there's some distinctions in the hypothetical you gave me. Thank you. Well, they're hypotheticals. There we go. I'm going to have more, but stop. Thank you. Thank you, David. Thank you, Ms. Van Owen, and thank you both for your argument today. We will take this matter under advisement and get back to you with a decision within a short time.